OPINION
Appellant, Deborah Galyon, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her child, Wesley Galyon, to the Butler County Children's Services Board ("BCCSB").
On January 6, 1995, BCCSB filed a complaint in the Butler County Court of Common Pleas, Juvenile Division, asserting that Wesley, born December 15, 1987, was a dependent child. The complaint alleged that appellant sexually abused Wesley's older brother on several occasions in November and December of 1994. The complaint further alleged that after Wesley's brother disclosed the sexual abuse, appellant was admitted to a hospital for suicidal ideation on January 5, 1995.
On January 18, 1995, a shelter care hearing was conducted and temporary custody was granted to BCCSB. Adjudicatory and dispositional hearings were subsequently conducted on March 27, 1995. The trial court found that Wesley was dependent and continued its prior order awarding temporary custody to BCCSB. On December 5, 1995, the trial court extended the temporary custody order.
On November 18, 1996, BCCSB filed a motion for permanent custody of Wesley. The trial court held a hearing on the permanent custody motion on December 5, 1996. On December 17, 1996, the trial court granted the motion, awarded permanent custody of Wesley to BCCSB, and terminated appellant's parental rights. It is from this judgment that appellant now appeals, setting forth the following two assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT MOTHER BY FINDING THAT HER CHILD COULD NOT BE PLACED WITH HER WITHIN A REASONABLE TIME.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT GRANTED CSB'S MOTION FOR PERMANENT CUSTODY INSTEAD OF PLACING THE CHILD IN LONG-TERM FOSTER CARE.
In her first assignment of error, appellant contends that the trial court erred by finding that Wesley cannot or should not be placed with her within a reasonable period of time. Pursuant to R.C. 2151.414(B)(1), permanent custody may be granted to an agency if a trial court determines by clear and convincing evidence that permanent custody is in the child's best interest and the child cannot or should not be placed with either of his parents within a reasonable time. Clear and convincing evidence is that degree of proof which will create in the mind of the trier of fact a firm belief as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361. The lower court's judgment will not be reversed on appeal if it is supported by sufficient credible evidence. Id.
A court must find that a child cannot or should not be placed with a parent within a reasonable time, if the court finds by clear and convincing evidence that one or more of the statutory factors in R.C. 2151.414(E) exist.[1] Of relevance to the instant case are R.C. 2151.414(E)(1) and (6), which provide:
 (1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (6) The parent violated section * * * 2907.03 of the Revised Code and the child or a sibling of the child was a victim of the violation * * *.
R.C. 2151.414(E)(6) supports the trial court's determination that Wesley cannot or should not be placed with appellant within a reasonable period of time. At the age of eighteen, appellant gave birth to a son, Jason. When Jason was one and one-half years old, appellant felt that she was unable to care for him, because she was abusing alcohol and marijuana and working as a prostitute and dancer. Consequently, appellant took Jason to a family and paid them $45 a week to take care of him. Jason spent the next fourteen years with this family and had no contact with appellant until November 1994.
On November 29, 1994, the family left Jason, who was now sixteen years old, with the Hamilton County Children's Protective Services. Appellant was subsequently contacted and Jason was placed with her on November 30, 1994. The day after he was placed with her, appellant testified that she began to drink heavily and engaged in sexual intercourse with Jason. During the next few weeks, appellant testified that she and Jason engaged in sexual intercourse on several more occasions.
A few days after Christmas, Jason began to suffer from hallucinations. Shortly thereafter, Jason was hospitalized for mental health treatment and disclosed appellant's sexual abuse to hospital personnel. Appellant was subsequently charged with two counts of felonious sexual battery for engaging in sexual conduct with Jason. Appellant pled guilty to one count of sexual battery and was sentenced to twenty-four months in prison on April 21, 1995. Based upon the foregoing, we find that the record contains clear and convincing evidence that appellant committed sexual battery in violation of R.C. 2907.03,[2] and that Wesley's sibling was the victim of the offense. Accordingly, R.C.2151.414(E)(6) required the trial court to find that Wesley cannot or should not be returned to appellant within a reasonable period of time.
R.C. 2151.414(E)(1) also supports the trial court's determination that Wesley cannot or should not be placed with appellant within a reasonable period of time. The cause for Wesley's removal was appellant's sexual abuse of Jason, which appellant acknowledged was partly due to her abuse of alcohol, and her subsequent hospitalization for mental health treatment. The record contains clear and convincing evidence that appellant has continuously and repeatedly failed to substantially remedy the problems that caused Wesley to be placed outside her home.
Appellant has a long history of alcohol abuse and mental illness. Appellant began abusing alcohol and drugs when she was a juvenile. Appellant acknowledges that she is an alcoholic and has had episodic difficulties with alcohol throughout her adult life. In addition, appellant has received mental health treatment since she was seventeen. She has received outpatient treatment and been hospitalized on several occasions for hallucinations, paranoid ideation, and suicidal ideation.
Dr. William Walters, a clinical psychologist, testified that he evaluated appellant in February 1995 and September 1996. The initial evaluation was performed to determine if appellant could be reunified with Wesley. Dr. Walters observed that appellant had been unable to provide and care for her children, partly because of her alcoholism and mental illness. He diagnosed appellant with major depression, recurrent with psychotic features, alcohol abuse and borderline personality disorder. Dr. Walters recommended that appellant receive mental health treatment, sex offender treatment, and substance abuse treatment prior to reunification with Wesley. In particular, Dr. Walters noted that although attendance at Alcoholics Anonymous ("AA") meetings was helpful, appellant needed to work with a substance abuse counselor and programs specific to her pattern of relapses.
Appellant was incarcerated from April 1995 to August 1996. Appellant received some mental health, sex offender, and alcohol abuse treatment in prison. After she was released from prison, appellant immediately entered the Sojourner House for treatment. Appellant attended drug abuse therapy, AA meetings, and received individual counseling at Sojourner.
In September 1996, Dr. Walters performed a second evaluation to determine the impact of appellant's involvement in treatment programs. During the evaluation, appellant reported that she was presently being prescribed mood stability medication for depressive symptoms such as suicidal feelings and crying spells. Appellant acknowledged that she had suicidal ideation as recently as the day prior to the evaluation. Once again, Dr. Walters diagnosed appellant with major depression, recurrent with psychotic features, alcohol abuse and borderline personality disorder. Dr. Walters recommended that appellant not be allowed visitation with Wesley, because she "had a lot of work to do" and needed to focus on her mental health, substance abuse and sex offender treatment.
On October 13, 1996, appellant left Sojourner prior to completion of the program and against the advice of staff. On October 24, 1996, appellant failed to keep her first counseling appointment with the Butler County Mental Health Board ("BCMHB"). As of December 5, 1996, appellant had only participated in one intake appointment with BCMHB and had not begun mental health counseling. Further, although appellant claimed to be attending AA meetings after she withdrew from the Sojourner program, she had not received any other substance abuse treatment prior to the permanent custody hearing. Finally, appellant refused to attend sex offender treatment with Catholic Social Services after she was released from prison. In sum, appellant failed to utilize treatment programs to remedy the problems that caused Wesley to be placed outside her home. Accordingly, R.C. 2151.414(E)(1) and (6) both required the trial court to find that Wesley cannot or should not be returned to appellant within a reasonable period of time and her first assignment of error is overruled.
In her second assignment of error, appellant contends that the trial court erred by finding that permanent custody was in Wesley's best interest. Instead of permanent custody, appellant argues that the trial court should have found that long-term foster care was in Wesley's best interest. In determining whether permanent custody or long-term foster care is in a child's best interest, R.C. 2151.414(D) requires that the court consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, sibling, relatives, foster parents and out-of-homeproviders, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
The record contains clear and convincing evidence that it was in Wesley's best interest to grant permanent custody to BCCSB. R.C. 2151.414(D)(1) supports the trial court's determination that permanent custody was in Wesley's best interest. Deborah Joy, a psychotherapist who has counseled and evaluated Wesley, testified that although Wesley felt some attachment to appellant, he had not seen her since the summer of 1995. Joy further testified that since Wesley was removed from appellant's home, he had made an important and meaningful attachment to his foster family. Based upon his attachment with his foster family and his age, Joy believed that Wesley was extremely capable of being adopted and forming a relationship and bond with a new family. Bonnie Clemmons, the court appointed special advocate for Wesley, also testified that Wesley made an easy adjustment with his foster family and didn't seem overly concerned about his mother and his separation from her.
R.C. 2151.414(D)(2) also supports the trial court's determination that permanent custody was in Wesley's best interest. Joy testified that although Wesley indicated that his first choice was to live with appellant, he also stated that adoption would be "agreeable" to him. Further, the guardian ad litem and Clemmons both recommended an award of permanent custody to BCCSB.
Finally, R.C. 2151.414(D)(3) and (4) support the trial court's decision to award permanent custody to BCCSB. Dr. Walters testified that appellant has not been able to properly care for her children because of her substance abuse and mental illness. Further, at the time of the permanent custody hearing, Wesley had already been in temporary custody for nearly two years. Joy testified that it was not in Wesley's best interest to remain in foster care for an extended period of time and that he needed permanence and stability. Clemmons testified that she recommended long-term foster care prior to appellant leaving the Sojourner program, because she believed that appellant was trying to get her life in order. However, due to appellant's failure to make changes and receive treatment, Clemmons testified that permanent custody was necessary to establish a secure home for Wesley. Based upon the foregoing, we conclude that clear and convincing evidence supported the trial court's determination that permanent custody was in Wesley's best interest. Accordingly, appellant's second assignment of error is overruled.
KOEHLER and POWELL, JJ., concur.
[1] R.C. 2151.414 was recently amended. Am.Sub.H.B. No. 419, was passed on February 21, 1996, and became effective on September 18, 1996. Sub.H.B. No. 274 was passed on April 24, 1996, and became effective on August 8, 1996. As a result of the amendments, R.C. 2151.414(E) now contains twelve statutory factors including "any * * * factor the court considers relevant." Since the amendments became effective prior to the filing of the motion for permanent custody in the present case, appellant's reliance on the eight statutory factors contained in the former version of R.C. 2151.414(E) and the Supreme Court's holding in In re William S. (1996), 75 Ohio St.3d 95, is misplaced. See In the Matter of Shahan (June 26, 1997), Hocking App. No. 97CA02, unreported.
[2] R.C. 2907.03 provides in part:
 (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
* * *
 (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis.